BROWN, C.J.
| defendant, St. Francis Medical Center, Inc., has appealed from the trial court’s judgment denying its exception of prematurity which asserted that, under the provisions of the Louisiana Medical Malpractice Act (“LMMA”), the complaint filed by plaintiffs, the surviving spouse and children of Erich Meseke, first had to be presented to a medical review panel pursuant to the provisions of La. R.S. 40:1299.47. For the reasons set forth below, the judgment of the trial court is reversed, and the plaintiffs’ petition is reversed and remanded for further proceedings consistent with this opinion.

Facts and Procedural Background

In December 2004, plaintiffs filed suit against St. Francis alleging that on January 17, 2004, Meseke, who had begun having serious lower right abdominal pain, sought medical intervention. He went to the emergency room at St. Francis at ap *138 proximately 6:00 p.m. and remained there until a bed was made available to him in the main hospital. On the night of January 18, 2004, Meseke was allegedly in need of assistance to go to the bathroom, and he unsuccessfully attempted to call for assistance twice by using the nurse call button. He also allegedly yelled out for a nurse, but no one came. When Meseke tried to go to the restroom unassisted, he fell to the floor and suffered damages including a crushed vertebra which required surgical intervention. Meseke later died on March 8, 2004, and in an amending petition, plaintiffs asserted that his fall was causally linked with his death.
12Paragraph six of plaintiffs’ original petition, quoted below in pertinent part; sets forth the specific allegations of negligence:
That ST. FRANCIS MEDICAL CENTER, INC., through its employees, was negligent in causing the damages suffered by Mr. Meseke, including but not limited to failing to maintain adequate safeguards to prevent the fall at issue, in failing to promptly answer the repeated request for assistance, in failing to promptly notify the appropriate physicians of the fall of Mr. Meseke and failure to provide medical care consistent with the,appropriate standards....
On December 21, 2004, St. Francis filed an exception of prematurity in which the hospital admitted treating Meseke in January 2004. The exception noted that plaintiffs’ petition for damages was filed after a medical review panel had been convened, but before it had rendered any opinion regarding the allegations of the petition. St. Francis requested that plaintiffs’ petition be dismissed without prejudice as premature pursuant to the provisions of La. R.S. 40:1299.47, which provides that no action may be commenced against a qualified healthcare provider until the claimants’ proposed complaint has been presented to a medical review panel. As noted above, this claim has been filed with a medical review panel which has not yet rendered a decision.
In a memorandum in opposition to the exception of prematurity, plaintiffs argued that Meseke simply needed to go to the bathroom and kept calling for help to assist him in getting there. Plaintiffs contended that there was no particular medical expertise involved in answering the call for restroom assistance and that the conduct at issue herein was no more medically rooted than a slip-and-fall at a grocery store. Plaintiffs relied on Rachal v. Tenet Healthcare Systems, 03-0630 (La.App. 4th Cir.11/12/03), 860 So.2d 1175, writ denied, 04-0205 (La.03/26/04), 871 So:2d 350, the facts of which involved' a patient who repeatedly called for assistance to use the bathroom, and, when no one responded, slipped and fell when attempting to reach the bathroom without assistance. The Fourth Circuit in Radial concluded that the hospital staffs failure to respond to the patient’s request for assistance was not the type of wrong envisioned by the Medical Malpractice Act. According to the Fourth Circuit’s reasoning, assistance to the bathroom could not be considered a part of the patient’s treatment, nor would such assistance require the professional skills of a doctor or nurse.
At the hearing on the exception of prematurity, plaintiffs again relied on Rachal, supra. St. Francis argued that although assistance to the bathroom was an issue in the case, plaintiffs herein are alleging more, and the determination of whether St. Francis provided appropriate medical care would require expert medical testimony. The trial court, stating that the issue was “a very, very close call,” nonetheless concluded that the exception of prematurity should be denied.

*139
Discussion

The dilatory exception of prematurity is the proper procedural mechanism to invoke when a plaintiff has failed to submit a medical malpractice claim for a decision by a medical review panel prior to filing suit against a qualified healthcare provider. McLemore v. Westwood Manor Nursing and Rehabilitation, LLC, 37,450 (La.App. 2d Cir.08/20/03), 852 So.2d 1170. Furthermore, an appellate court has jurisdiction to hear an appeal from the denial of an exception of prematurity in such instances 14because the benefits of a medical review panel will be lost if not obtained prior to the prosecution of a medical malpractice lawsuit. Romero v. Willis-Knighton Medical Center, 38,374 (La.App. 2d Cir.02/07/04), 870 So.2d 474.
In order to assess whether the trial court in the instant case correctly denied the exception of prematurity, we must determine whether the allegations in the plaintiffs’ petition constitute claims under the LMMA. The term “malpractice” is defined in pertinent part in the LMMA as:
Any unintentional tort or any breach of contract based on healthcare or professional services rendered, or which should have been rendered, by a healthcare provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a healthcare provider arising from acts or omissions in the training or supervision of healthcare providers....
La. R.S. 40:1299.41(A)(8).
In turn, the provisions of La. R.S. 40:1299.41(A)(9) define “healthcare” as:
Any act, or treatment performed or fúr-nished, or which should have been performed or furnished, by any healthcare provider for, to, or on behalf of a patient during the patient’s medical care, treatment or confinement.
In order to help determine whether the circumstances of a particular case, as alleged in a petition, fall under the LMMA, the Louisiana Supreme Court supplied several factors to consider in Coleman v. Deno, 01-1517 (La.01/25/02), 813 So.2d 303, 315, 316:
(1) Whether the particular wrong is “treatment related” or caused by a dereliction of professional skill;
|r(2) Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) Whether the pertinent act or omission involved assessment of the patient’s condition;
(4) Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;
(5) Whether the injury would have occurred if the patient had not sought treatment; and
(6) Whether the tort alleged was intentional.
Without question, St. Francis is a qualified healthcare provider, and Meseke was a patient admitted to St. Francis in order to receive medical treatment. Furthermore, healthcare includes any act which should have been performed by any healthcare provider for a patient during the patient’s confinement, and we conclude that assisting a patient of questionable ambulatory status to the bathroom falls within the definition of “healthcare.” Nothing in the record suggests that Meseke would have needed assistance absent his medical condition.
Additionally, we observe that the acts of negligence alleged in the petition, as quoted above, include not only failing to *140 promptly answer repeated requests for assistance, but also failing to maintain safeguards to prevent the fall, which we take to mean neglecting to take extra safeguards due to the common frailty of hospital patients, as well as neglecting to notify the appropriate physicians, and failing to provide medical care consistent with appropriate standards. A hospital commonly houses patients who are frail, weak, or otherwise in need of care; therefore, the standards for providing a safe hospital stay are higher than for a visit at a hotel or inn. To | ¿reduce the specifics for such a standard clearly requires medical knowledge and hospital experience. When a nurse should notify a physician of a potential harm suffered by patient, and whether or not hospital personnel failed to provide medical care consistent with appropriate standards, as alleged by plaintiffs, are also clearly medically related questions.
Whether there was an error in the assessment of Meseke’s condition on arrival that led to a failure to anticipate Meseke’s need for assistance to the bathroom is also in question. Before negligence or malpractice can be ascertained, it must be determined whether defendant knew, or should have known, of the patient’s needs.
These allegations against the hospital are all intertwined, are all based on healthcare, and, when viewed in their totality, are “treatment related” as set forth in the first part of the Coleman test. Furthermore, questions concerning the maintenance of adequate safeguards to prevent the fall, as well as issues concerning prompt notification of physicians, are issues related to patient assessment and will require expert medical evidence in order to determine whether the appropriate standard of care was breached; thus, the second part of the Coleman test is satisfied as well. Finally, plaintiffs’ supplemental and amending petition for damages states, “Petitioners assert that such injuries were caused and/or contributed and/or accelerated the death of ERICH ME-SEKE ...,” which is an allegation that would have to be considered as coming under the LMMA. Accordingly, we conclude that the trial court erred in denying the exception of prematurity filed by defendant.
|7In Rachal, supra, we note that plaintiffs amended petition argued that the sole and proximate cause of her injuries was the defective condition of a floor surface that was excessively slippery and dangerous. The trial court dismissed Rachal’s claims to the extent that they fell within the purview of the LMMA, but preserved her right to proceed with her tort claim alleging a defective floor. The hospital then filed an application for supervisory writs which was denied.
Given those factual circumstances, we agree with the Rachal court’s affirming of the trial court’s judgment that preserved the general tort claim in the amended petition. However, we cannot agree with any rationale in Rachal that would require us to find that the alleged negligence in this case is not the type of wrong envisioned by the LMMA.
La. R.S. 40:1299.41(A)(8) states that “failure to render services timely and the handling of a patient, including loading and unloading of a patient” are examples of medical malpractice. Plaintiffs have alleged that defendant’s employees failed to respond to calls for help and failed to transport plaintiff to the bathroom, which seems to be along the same general lines as “loading and unloading.” It would appear, therefore, that plaintiffs’ allegations are precisely the kind envisioned by the authors of the LMMA.

Conclusion

For the reasons set forth above, the judgment of the trial court denying the *141 exception of prematurity is hereby REVERSED.
1JT IS ORDERED, ADJUDGED, and DECREED that St. Francis Medical Center’s exception of prematurity be granted. Costs are assessed to plaintiffs, Lucille Meseke, Gordon Meseke, Grace Battista, Gloria Galloway, Individually and on Behalf of Decedent, Erich Meseke.
REVERSED and REMANDED.